PHILIP RAISIN,

*vs.*

JOHN WOOD.

*Kent, Aug. T.* 1818.

A written submission to arbitration directed that the award should be made in writing, indented, under the hands and seals of the arbitrators. The award was made in writing, but was not indented nor under seal. *Held,* to be void in equity as well as at law—that a Court of Equity will not decree performance of an award which is void at law, except upon a subsequent agreement between the parties to abide by it.

BILL FOR THE PERFORMANCE OF AN AWARD.—The complainant's interest in certain real estate was sold under execution process, issued out of the Supreme Court for Kent County, returnable to the Oct. T. 1809 ; and was purchased by the defendant for $105.65. At the return of the execution some dispute arose as to what interest the complainant held in the real estate. At the time of the sale his interest was supposed to be one equal ninth part, and he had obtained the legal title only to such share. The bill alleged that he in fact held an equitable title to eight ninth parts, having bought and paid for the additional shares and holding them under alienation bonds. The complainant being about to object to the confirmation of the sale, the matter was compromised by an agreement between the parties to submit the question of title, as also a dispute as to how the rent should be apportioned, to five arbitrators. The defendant entered into a written submission to abide by their award, and thereupon the sale was confirmed. By the terms of the submission the award was to "be made in writing, indented, under the *hands and* " *seals* of said arbitrators, or any three of them, &c."

The arbitrators met, and upon hearing the parties, made and delivered their award in writing, whereby they apportioned the rent which had accrued, and further awarded that the defendant should pay to the complainant the sum of $366.00 ; in consideration of which, the complainant was directed to release and convey to the defendant all his right and claim to eight ninth parts of the premises. The award, however, was *not under seal,* as by the submission it was directed to be made.* The award being delivered to the parties, the complainant withdrew an objection he had previously made to the execution of a deed by the sheriff, and thereupon the sheriff conveyed the premises to the defendant, pursuant to the sale.

The defendant refusing to perform the award, this bill was filed.

*The submission was by an arbitration bond, dated 13th of March 1810, whereby Wood became bound to Raisin, and John Revell, (the tenant of the premises, who was joined on account of the rent being included in the reference) in $200.00 with condition "to stand to &c., the award of Jacob " Biddle, Lowder Layton, James B. Ralston, Thomas Winsmore and " Benjamin Potter, or any three of them, chosen to arbitrate for, upon or " concerning a matter in dispute respecting the house and lot and store " house occupied by Russell and Clifton, and also as it regarded the rent " for 1809, and all manner of disputes between said parties, for or by any " other matter or thing whatsoever, from the beginning of the world to this " date, so as the award be made *in writing, indented,under the hands and " seals* of the said arbitrators, or any three of them, to be delivered to said " parties on or before the 10th day of April next."

The award was as follows, viz:

" We, the subscribers, being amicably chosen to settle all matters in con- " troversy between Philip Raisin and John Revell, of the one part,and John " Wood of the other part, and after hearing the proofs and allegations of " both parties and duly considering the same. are of opinion that the said " John Wood shall pay the rent for the property where he now lives unto " Philip Raisin, up to the first day of January last, and from that time he " shall pay eight months of the rent for said property he now occupies to " John Wood, and that the said John Wood or his legal representatives " shall pay to the said Philip Raisin, or his legal representatives or assigns, " the sum of three hundred and sixty-six dollars, good and lawful money " of the State of Delaware, in consideration of which the said Raisin and

The answer, setting forth the title to the premises, denied that the complainant was in fact entitled to more than the one-ninth part of the premises, as was supposed at the sale. It admitted, however, the facts alleged in the bill touching the submission to arbitration. The defence taken upon the merits was, that the submission was intended to include only the question of title and the apportionment of the rent, whereas the arbitrators entertained a claim by the complainant for certain repairs upon the premises, made before the sale, a claim which had not been in controversy; and that the sum awarded was in fact for such repairs. It was also objected that the award was void, because it had not been made under seal and indented, in conformity with the submission.

Issues were joined and depositions taken by both parties. The cause came before the Chancellor for hearing on the bill, answer, exhibits and depositions, at the Aug. T. 1818.

*Hall,* for the complainant.

The award is not unreasonable. Raisin put on the repairs. Wood has the benefit of them. The objection mainly relied on is wholly technical, viz: that the arbitrators have not *sealed* the award. But Wood took the sheriff's deed the *day after* the award, and in consequence of it. To effect justice, this Court will execute it, although it may not be good at law by reason of some *accidental* circumstances. It is like the case of a joint bond upon the death of one of the obligors. Equity will carry it into effect against the executors of the deceased

---

" his representatives shall release all his right, title, claim, interest and
" demand of all his eight-ninth parts of the house and lot now occupied
" by John Revell. The above sum of three hundred and sixty-six dollars
" is to be paid by the said John Wood or his legal representatives unto the
" said Philip Raisin or his representatives or assigns, at or upon the 20th
" day of September next, with legal interest thereon from the date hereof.
" As witness our hands this 20th day of March, eighteen hundred and ten."

obligor. In 2 *Vern.* 24, there was a submission to an award to be made by bond; the award was made; it was not binding by force of law; plaintiff was to pay £900; and release, &c., and defendant to assign securities. Plaintiff sold land to raise the £900, expecting defendant would receive it, *as he gave him intimation he would.* He tendered the £900, and a release was executed by him. Though there was no other execution of it on the part of plaintiff, and though the award was extra judicial and not good in strictness of law, yet it was decreed to be performed in specie. In 1 *Com. Dig.* 540, *Arbitrament* (*E.* 1.) an award not indented was held good, though the submission required it to be so; citing *Barnes* 55.

*Hayes,* for the defendant.

The award is both iniquitous and illegal:—

1. *Iniquitous.* It was made for repairs put on the lot, a matter not in dispute when the submission was entered into. No claim for repairs was set up until the arbitrators met. The award would not prevent a second recovery for the same claim, the repairs not being mentioned either in the arbitration bond or in the award. The award for the money is expressed to be in consideration that Raisin *shall release his right of property,* and not for repairs. Further, the repairs were put upon the lot *before the sale.* Wood then bought the improvements as well as the lot, and paid accordingly. It appears also from the testimony that Raisin held possession of this lot nine years before the sale, and he does not appear to have paid any rent to his co-tenants. It was worth $60 per annum or $540, a sum more than equal to the value of the improvements.

2. The award is *illegal,* in two particulars. *First,* It does not pursue the condition of the arbitration bond, being *not under seal nor indented.* 1 *Bac.: Abr.* 140 *E.* Award to be delivered under hand and seal, if under seal

only, it is not sufficient. In *Cro. Jac.* 277, the submission was to the award of A. B. and C. to be made under their hands *and seals*. An award under their hands only, held not good. In 1 *Strange* 116, it was held that an award must pursue the submission in point of form as well as of substance. Further, the award is void, as well in equity as at law. 1 *Eq. Cas. Abr.* 48 : *par.* 1: two submit :—award made of part only, so that it is void at law :—this shall not be made good in equity, *par.* 2 ; so, if the award differs from the submission, it is void in equity as well as at law. In the case cited by complainant's counsel from 2 *Vernon* 24, the decree executed the award on the ground of a *subsequent agreement* to abide by it.

Further,—the award is bad because it is unequal. Compensation is given for repairs, but the award does not direct a release of any future claim for the repairs. A claim might be maintained for the same repairs notwithstanding the award. The release directed for Raisin's share of the lot is a nullity. Wood had bought Raisin's share and interest in the lot. 1 *Bac. Abr.* 147 : *Arbitrament and Award, E. 5th Article.* Awards must end the controversy.

*Hall*, in reply.

Any rents accruing from the premises in the possession of the complainant before the sale form no part of this case, not being included in the bill and answer. Raisin, however, satisfied them to the co-tenants.

RIDGELY, CHANCELLOR.—The complainant comes into this Court to recover in equity the sum of $366.00, upon an award made on a submission to arbitrators by the complainant and defendant, according to certain bonds entered into by them in March, 1810. The penalties of the bonds are $200.00 ; the sum awarded is $366.00. The bonds

required that the award should be made in writing *indented*, and under the *hands and seals* of the arbitrators. The award was *not indented*, and was not under the *seals* of the arbitrators ; and, therefore, it is bad at law, because it was not made pursuant to the submission. *Cro. Ja.* 277 : .1 *Str.* 116 : 1 *Com. Dig. Arbitrament, p.* 557. (*I.* 6.) The question, therefore, is whether a court of equity will compel a performance or payment of the money, as the case has been made out.

According to 3 *P. Wms.* 187, a bill lies to compel a specific performance of an award to *convey an estate*, when the party submitting has received the money in consideration whereof he is to convey the estate. By this acceptance the defendant undertook to perform the award ; he consented to it, and made his own agreement for a valuable consideration, viz : the money paid. And, so in the case of *Norton vs. Mascall*, 2 *Vern.* 24, the award was decreed to be performed upon the footing of an agreement of the party to accept the money, thereby affirming the award and making it his own agreement. And so, are all the cases cited. The note in 3 *P. Wms.* 190 states very clearly the difference between awards to pay money and awards to do anything in specie. In the latter case the acceptance of the money, or agreement to the award, is the true reason of compelling a specific performance ; especially as the party might be relieved by a bill in equity against the penalty of the bond, on making satisfaction or complying with the award ; but where money is to be paid there can be rarely any good reason to go into equity to compel it.

No case has been cited, and I can find none, where an award of any kind, unconnected with a subsequent agreement, has been carried into execution by a court of equity. On the contrary 1 *Eq. Cas. Ab.* 48 cites two cases where it has been determined that a void award, or an award differing from the submission, shall not be made good in

equity.  The case cited from 1 *Com. Dig.* 540, *Arbitrament*
(*E.* 1,) that an award *not indented* is good, though the sub-
mission requires it to be so, is an addition made to that
work, and refers to *Barnes* 55, which is an authority in no
great estimation.

There is no proof that Wood ever agreed to pay the
money, or in any sort, ever ratified by any promise, or by
any act, the award; therefore, this case is not within the
reason of the cases in 2 *Vernon and* 3 *P. Wms.* : nor within
any principles upon which a court of equity should compel
the payment of the money.  In the bill, it is asserted that
it was agreed by the parties, before the submission, that
sheriff Lockwood should make no deed to Wood until
the matters in controversy should be adjusted by arbitra-
tors; and that after the award was made, the complainant
wrote to Lockwood, consenting that he should make a
deed to Wood; upon which, on the 21st of March 1810, a
deed was accordingly made.  All this is denied in the
answer; and it is insisted that Lockwood, after the sale
was confirmed, never refused to execute a deed.  The sale
was made on the 10th of May,1809.  The purchase money,
$105.65, was paid to Lockwood on the 15th of August 1809,
with a promise by Lockwood, that if the sale should not
be confirmed, he would return the money.  These are the
facts; and it is impossible to infer anything like an agree-
by Wood, subsequent to the award, to pay the money
awarded.  The only circumstance that seems to have a
relation to the award is that the deed was made on the 21st
of March, the day after the award.  But it would be carry-
ing presumption to a great length, to draw a conclusion
from that solitary, equivocal fact, against the answer too,
that Wood had agreed to the award.  The delay in making
the deed is not to be accounted for by any testimony in
the cause; and, therefore, it can have no weight in estab-
lishing any agreement by Wood to the award.

This case was compared by the complainant's counsel to

a joint bond, which a court of equity would set up against the representatives of a deceased obligor. The comparison fails in this respect. Such a bond is considered as an agreement in writing; and, therefore, though the obligation and penalty are gone by the legal demand being gone, yet the condition, taking it altogether, being considered as an agreement to pay the money, under hand and seal, the Court will set it up against the representatives of the person making such bond. But an award not made according to the submission, and therefore void at law and in equity, never could be deemed the agreement of the party; and, therefore, to set it up would be making a new agreement. I can find no case in which a joint bond has been set up against the heir of a deceased obligor, where the heir has not been named in the bond. Equity only gives a remedy but does not vary the agreement.

.It is not necessary to inquire into the merits of the award. As to the receipt of the rents by Raisin, before the sale of the land, that makes no part of the case in the bill or answer.

Upon the whole, the bill must be dismissed, with costs.